IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TODD MANESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE VILLAGE OF PINEHURST, | ) | 1:20-CV-344 |
| NORTH CAROLINA, and EARL | ) | |
| PHIPPS, in his official capacity as | ) | |
| Chief of Police of the Village of | ) | |
| Pinehurst Department and in his | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| THE VILLAGE OF PINEHURST, | ) | |
| NORTH CAROLINA, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SITEMED NORTH AMERICA, LLC | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

After a former police officer sued the Village of Pinehurst for discrimination and wrongful termination, the Village filed a third-party complaint against SiteMed North America, LLC. The Village seeks indemnification or contribution for the officer's claims under the Genetic Information Nondiscrimination Act. SiteMed moves to dismiss the third-party complaint for failure to state a claim. Because GINA does not authorize

claims for indemnification or contribution and it pre-empts state law indemnity claims, SiteMed's motion to dismiss will be granted.

## Background and Facts

Todd Maness, a former Pinehurst police officer, filed this action against the Village asserting nine causes of action arising out of the termination of his employment. Doc. 11. Relevant to the pending motion are his three claims for GINA violations. *Id.* at 12–17. He contends, among other things, that the Village violated GINA by requiring him to fill out a form asking whether he or his immediate family members "currently had, or had a history of, a variety of diseases or disorders including: heart disease; stroke; cancer; high blood pressure; or diabetes." *Id.* at ¶¶ 33–34; *see also* Doc. 11-1 at 1. According to Mr. Maness, he was required to fill out this form before he could provide blood and urine samples collected as a condition of his employment. Doc. 11 at ¶¶ 29–31.

According to the Village's complaint against SiteMed, which the Court accepts as true for purposes of the motion to dismiss, the Village contracted with SiteMed to provide health and wellness examinations for members of the Village Police Department. Doc. 22 at ¶ 10.[1] SiteMed provided the form at issue to the Village, which the Village then gave to employees to complete as part of SiteMed's collection of the required blood

---

[1] All citations to Doc. 22 refer to the Third-Party Complaint against SiteMed, beginning on page 16 of the Village's Answer and Third-Party Complaint, unless otherwise stated. The Court may consider the contract, which is cited extensively in the Third-Party Complaint, without converting SiteMed's motion to dismiss into one for summary judgment. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (holding that a court may consider certain extrinsic evidence in ruling on a 12(b)(6) motion if it was "integral to and explicitly relied on in the complaint" and the opposing party does not challenge its authenticity). The Village does not dispute the authenticity of the contract. Doc. 32 at 2 n.2.

2

Case 1:20-cv-00344-CCE-LPA   Document 37   Filed 02/24/21   Page 2 of 11

and urine samples. *Id.* at ¶¶ 14–16. In their contract, SiteMed "agree[d] to comply with all applicable federal, state and local regulations and requirements pertinent to the . . . service being provided." *Id.* at ¶ 11; *see also* Doc. 31-1 at 2. The Village relied on this promise and SiteMed's expertise and had no role in developing any part of the SiteMed form. Doc. 22 at ¶¶ 8–10, 16.

In their contract, the parties included a "hold harmless" provision in which SiteMed agreed to indemnify the Village from certain losses and costs. Specifically, the contract provided that:

> SiteMed agrees to protect, defend, indemnify, and hold the Village of Pinehurst and its officers, employees, and agents free and harmless from and against any and all losses, penalties, damages, settlements, costs, charges, professional fees or other expenses or liabilities of every kind and character arising out of or relating to any and all claims, liens, demands, obligations, actions, proceedings or causes of action of every kind and character in connection with or arising directly or indirectly out of this agreement and/or the performance hereof and caused by the negligence of SiteMed. SiteMed further agrees to investigate, handle, respond to, provide defense for, and defend any such claims . . . [and] to bear all other costs and expenses related thereto, even if [any such claims are] groundless, false or fraudulent.

Doc. 31-1 at 3;[2] *see also* Doc. 22 at ¶¶ 12–13. Based on these provisions, the Village asserted third-party state law claims against SiteMed for indemnification and, alternatively, for contribution if "it is determined that the Village is in any way liable to Plaintiff for the conduct stated herein[.]" Doc. 22 at ¶¶ 18–26.[3]

---

[2] The contract refers to SiteMed as "Service Provider" but the Court has used SiteMed's name in the block quote for clarity and ease of reading.

[3] The Village clarified in its response in opposition to SiteMed's motion to dismiss that "its claims for indemnification and/or contribution against SiteMed are only sought with respect to

3

## Discussion

### I. Indemnification or contribution under the Genetic Information Nondiscrimination Act

The parties have not cited, and the Court has not found, any decision by any court deciding whether GINA authorizes claims for indemnification or contribution. But there are many opinions deciding the same issue under federal statues similar to GINA and holding that claims for indemnification and contribution are not allowed. Those cases provide significant guidance and their reasoning applies to contribution and indemnity claims asserted when GINA violations are at issue.

In 1981, the Supreme Court decided two cases involving contribution for claims asserted under federal statutes. *Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77 (1981); *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981). Those cases establish that a right of contribution may be created in either of two ways: "first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law." *Tex. Indus.*, 451 U.S. at 638 (citing *Northwest Airlines*, 451 U.S. at 90–91). The cases also provide guidance in how to evaluate these two questions.

In *Northwest Airlines*, female flight attendants asserted that the airline violated their rights under the Equal Pay Act and Title VII. 451 U.S. at 81. The airline brought

---

Plaintiff's GINA claims (to the extent based on the unlawful questions in the SiteMed form). The Village does not seek relief against SiteMed concerning Plaintiff's claims under the ADA or state law, nor does it seek relief concerning any of its alleged independent conduct, including Plaintiff's alleged termination." Doc. 32 at 3 n.3.

an action for contribution against the flight attendants' union based on a contractual agreement. *Id.* at 82. The Court held that neither the Equal Pay Act nor Title VII expressly or impliedly creates a right to contribution in favor of employers. *Id.* at 91. Neither statute created an express right to contribution, employers were not part of the class in which the statutes were enacted to protect, the remedial schemes were comprehensive and did not indicate any intent to authorize additional remedies, and the legislative histories provided no support for the argument that the statutes authorized contribution claims. *Id.* at 91–94. For these same reasons, it would be "improper" to add a federal common law "right to contribution to the statutory rights that Congress created in the Equal Pay Act and Title VII." *Id.* at 98.

Later that same term, the Court held in *Texas Industries* that there was no right to contribution under federal antitrust statutes or federal common law. 451 U.S. at 646. The Court similarly looked at the express language of the statutes, Congressional intent, and legislative histories to determine that Congress neither expressly nor implicitly intended to create a right to contribution. *Id.* at 639–40.

Following *Northwest Airlines* and *Texas Industries*, many courts have held that claims for contribution are not allowed under other federal statutes and have applied the same framework to dismiss claims for indemnity. *See*, *e.g.*, *Scalia v. Emp'r Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1104 (9th Cir. 2020) (holding the FLSA does not provide a right to contribution or indemnification); *Bowers v. Nat'l Collegiate Athletics Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003) (holding there is no right to contribution under section 504 of the Rehabilitation Act or Title II of the ADA); *Anderson v. Loc. Union No. 3, Int'l Bd. of*

*Elec. Workers, AFL-CIO*, 751 F.2d 546, 548 (2d Cir. 1984) (holding there is no right to indemnification for Title VII claims or for contribution or indemnification for § 1981 claims, following *Northwest Airlines*).

### A. Does GINA create an express or implied right to indemnification or contribution?

As the parties agree, GINA does not contain express language providing for indemnification or contribution. "In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, [the] task is one of statutory construction." *Northwest Airlines*, 451 U.S. at 91. Factors relevant to Congress's intent include legislative history and the underlying purpose and structure of the statutory scheme. *Id.* "[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy . . . does not exist." *Id.* at 94.

The legislative history of GINA does not contain any reference, adverse or favorable, to contribution or indemnification under 42 U.S.C. § 2000ff for employment discrimination claims. *See, e.g.*, 153 CONG. REC. HR4083-01 (2007); 154 CONG. REC. S3309-03 (2008); S. REP. No. 110-28(I) (2007); H.R. REP. No. 110-28(I)–(IV) (2008).[4] GINA was designed to eliminate employment discrimination based on genetic information. *See generally,* Bradley A. Areheart, Jessica L. Roberts, *Gina, Big Data, and the Future of Employee Privacy*, 128 Yale L.J. 710, 716 (2019). It identifies conduct that

---

[4] Contribution is mentioned in this legislative history, but only in reference to Title I of GINA related to Health Insurance Companies and premium contribution.

is an unlawful employment practice by an employer, *see* § 2000ff-1(a), and it lists specific exceptions permitting the acquisition of genetic information. *See* § 2000ff-1(b). The circumstances are defined, and the remedies and enforcement are specified in § 2000ff-6(a).

GINA's remedial scheme is comprehensive. The remedies and enforcement section explicitly incorporates the enforcement and remedial provision of Title VII, and courts have uniformly held that contribution and indemnification are not allowed under Title VII. *See, e.g.*, *Northwest Airlines*, 451 U.S. at 95 (holding Title VII does not create a right to contribution); *Anderson*, 751 F.2d at 548 (2d Cir. 1984) (extending *Northwest Airlines* rationale to Title VII claims for indemnification).

The view that GINA does not authorize claims for contribution or indemnification is strengthened by the regulatory system that implements GINA. The regulation places the burden on employers, not their contractors, to "tell health care providers not to collect genetic information, including family medical history, as part of a medical examination intended to determine the ability to perform a job," as well as requiring employers to "take additional reasonable measures within its control if it learns that genetic information is being requested or required." 29 C.F.R. § 1635.8(d).

Nowhere within the statute, its structure, or otherwise, does GINA contemplate the right to contribution or indemnification. The Village has not identified anything to indicate an intent on the part of Congress to create a right to contribution or indemnification in favor of employers under GINA. The Village does not have an express or implied right to contribution or indemnification under GINA.

7

## B. Does federal common law create a right of indemnification or contribution?

No federal common law right to contribution or indemnification arises under GINA. A cause of action is only cognizable under federal common law in two contexts: (1) where a cause of action "is necessary to protect uniquely federal interests;" or (2) where Congress "has given the courts the power to develop substantive law." *Tex. Indus.*, 451 U.S. at 640.[5]

GINA does not implicate a uniquely federal interest. Uniquely federal interests include cases concerning the rights and obligations of the United States, interstate disputes, international disputes, relations with foreign nations, and admiralty cases. *Id.* at 641. The right to indemnification or contribution under GINA is not related to any of these issues or areas of law.

As discussed, *supra*, GINA does not mention contribution or indemnification in any relevant context and it does not give the courts the power to create additional remedies. The Supreme Court held that federal courts "are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers." *Northwest Airlines*, 451 U.S. at 95. In the face of comprehensive legislative schemes, courts may not "fashion new remedies that might upset carefully considered legislative programs." *Id.* at 97. GINA is such a comprehensive legislative scheme, and there is no federal common law right to contribution or indemnity.

---

[5] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

## II. Indemnification or contribution under contract

The Village seeks indemnification or contribution from SiteMed based on the express language of the contract. "[W]hen the language of a contract is clear and unambiguous, the court must interpret the contract as written." *Root v. Allstate Ins. Co.*, 272 N.C. 580, 583, 158 S.E.2d 829, 832 (1968).

The contract here does not mention contribution. *See supra* at p. 3. The Court will not "read in" a contribution provision where it does not exist. *See E.E.O.C. v. Blockbuster Inc.*, No. RWT 07cv2612, 2010 WL 290952, at *2 (D. Md. Jan. 14, 2010) (declining to read any right to contribution into a "hold harmless" provision of a service agreement that "neither suggests any right to contribution nor applies to any violation of Title VII.").

The plain language of the contract provides for indemnification, which would usually be an enforceable provision. But such contracts cannot be enforced under state law if pre-empted by a federal law. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 602 (4th Cir. 2010). The Fourth Circuit has held that state law indemnity claims under the Fair Housing Act, the Americans with Disabilities Act, the Fair Labor Standards Act, and the Securities Exchange Act are pre-empted because allowing a claim for indemnity would undermine the regulatory purposes of those laws. *See Id.* at 602 (FHA and ADA); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) (FLSA); *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir. 1989) (Securities Exchange Act). As explained in *Niles Bolton*:

> The principal purpose of the ADA is to (1) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and (2) to provide clear, strong,

9

> consistent, enforceable standards addressing discrimination against individuals with disabilities. The primary purpose of the FHA is to provide for fair housing throughout the United States. Furthermore, compliance with the ADA and FHA . . . is nondelegable in that an owner cannot insulate himself from liability for discrimination in regard to living premises owned by him and managed for his benefit merely by relinquishing the responsibility for preventing such discrimination to another party.

602 F.3d at 602. "Allowing an owner to completely insulate itself from liability for an ADA or FHA violation through contract diminishes its incentive to ensure compliance with discrimination laws." *Id.*

District courts have followed these cases to prohibit state law indemnity claims for other violations of employment discrimination law. *See*, *e.g.*, *Blockbuster, Inc.,* 2010 WL 290952, at *3–4 (Title VII); *Baltimore Cty. v. Buck Consultants, LLC,* No. RDB-15-0089, 2016 WL 1222155, at *7 (D. Md. Mar. 29, 2016) (ADEA); *Thurmond v. Drive Auto. Indus. of Am., Inc.,* 974 F. Supp. 2d 900, 908 (D.S.C. 2013) (Title VII).

Here, the Village seeks to "completely insulate" itself from the consequences of violating employment discrimination provisions in a federal statute, just as in *Niles Bolton*. *See* 602 F.3d at 602. GINA, like the ADA and the FHA, is a statute whose principal purpose is regulatory. It provides a comprehensive scheme which is similar to ADA, the ADEA, Title VII, and other federal statutes implemented to prevent employment discrimination on impermissible grounds. And, as noted, *supra*, this is a nondelegable duty. *See* 29 C.F.R. § 1635.8(d). Allowing the Village to insulate itself from liability would undermine the regulatory purpose of GINA and diminish the Village's incentive to ensure compliance with GINA. *See Niles Bolton*, 602 F.3d at 602. Thus, the Village's indemnification claims are pre-empted.

**Conclusion**

The Village's third-party claims for indemnification or contribution under GINA will be dismissed for failure to state a claim. There is no express or implied right to indemnification or contribution under GINA, and the Court declines to fashion a common law remedy allowing such in the face of GINA's comprehensive remedial scheme. The Village's state law claims will be dismissed because the Village did not contract for contribution, and contractual indemnification claims based on GINA would undermine GINA's regulatory purpose and are pre-empted.

It is **ORDERED** that the third-party defendant SiteMed North America, LLC's motion to dismiss the third-party complaint, Doc. 29, is **GRANTED** and all claims against SiteMed North America, LLC are **DISMISSED**.

This the 23rd day of February, 2021.

_____
UNITED STATES DISTRICT JUDGE